Defendant Yamada pleaded guilty to a charge of forgery in the second degree. The trial court accepted the guilty plea, sentenced Yamada to two years' imprisonment, ordered him to serve four months of the term, and suspended the remainder. Yamada appealed and the Court of Criminal Appeals,426 So.2d 903 remanded because of a failure to follow the procedure set forth by the United States Supreme Court in North Carolina v.Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); that is, the trial court must find a factual basis for the plea. The Court of Criminal Appeals held that assertions by the prosecuting attorney of what he expects the evidence to show are insufficient to show a factual basis to support a guilty plea when the defendant asserts his innocence. We reverse.
During the trial, the trial judge explained the rights that would be relinquished by the defendant by pleading guilty. The defendant was then asked if he was pleading guilty because he was in fact guilty. The following occurred:
 "MR. YAMADA: No, Your Honor. I am not pleading guilty because I am guilty. I maintained that I had no criminal intent and I'm not guilty; however, I acknowledge that I did supply the endorsement of W.R. Inman to the check which was presented to the Northeast State Bank. I have never tried to hide that fact, but, Your Honor, I did not attempt to copy or make the signature look like that of W.R. Inman. I supplied that endorsement on the instructions of the owner of the funds who was my then employer, who stated that W.R. Inman was not entitled to the funds. He further instructed me to supply the endorsement. I believe he had the authority to ask me to do that. I again state I am willing to make complete and total restitution to any party who lost money because of my action. I am pleading guilty as a compromise and in order to avoid the expense and possible more serious consequence which might occur as a result of a trial.
 "THE COURT: All right, is the State in the position to make a showing as to what the evidence in this case would be?
 "MR. IGOU: I believe so, Your Honor. Judge, the State would expect to show, through its witnesses and testimony in evidence, that some meetings occurred prior to July, or prior to, at least, July 13, 1979, between Mr. Yamada and some of his associates and Mr. W.R. Inman of Higdon, Alabama, Jackson County, Alabama, and his associates regarding some coal property, and we expect to show that an agreement was reached for the payment of $75,000 to Mr. Inman and/or his associates for a coal mine which was in existence at that time. We expect to show that on or about the 13th of July, 1979, that the defendant called Mr. Inman and said he had his money, and that he was at the Atlanta Airport and he would call later to make arrangements to deliver the money. We expect to show that there was a meeting on the next day arranged, and it was at the office of Mr. Morris Beck, Mr. W.M. Beck, Sr.'s son and law partner. That that meeting was held the next day and that the witness, Mr. Inman, was offered less than the $75,000 agreed upon consideration, and that he refused that offer and said that there was no deal at that time. We expect to show also that on or about the 13th of July, 1979, that Mr. Yamada and an associate of his at that time, one George Hambert, went to the Northeast State Bank at Henager, here in DeKalb County; that Mr. Yamada had in his possession at that time a $75,000 cashier's check. Furthermore, we expect to show that he deposited this check with the endorsement of W.R. Inman on the check to a new account that was opened by Mr. Yamada and Mr. Hambert, in the name of Midnight Coal Company. We expect *Page 908 
to show further that Mr. Inman will testify that he never endorsed that check and he did not endorse anyone, or did not authorize anyone to endorse his name on the check. We expect to show that Mr. Yamada made the statement, or made a statement, under the proper Miranda warning, to the fact that he did sign the name, W.R. Inman, on the check. Further, we would expect to show that on or about the 15th of July, the Northeast State Bank from the account of Midnight Coal Company; that one cashier's check was made payable to Mrs. Yamada, Shelia Yamada, in the amount of $10,000, and was later deposited to her own account at Central Bank of Alabama, in Fort Payne, and another cashier's check drawn on that account was made payable to Mr. Jimmy Lindsey, the Clerk of the Court, here in DeKalb County, for payment of an action which Mr. Yamada owed the Court; and the third check was in the amount of $4,000, and it went to Mr. George Hambert, and on July 16 it was deposited to his account in Central Bank, and on the same day he wrote a check to Mrs. Yamada in the amount of $4,000, and on that date Mrs. Yamada paid some $13,600 to a real estate firm here in Fort Payne. That basically, is what the State expects to show."
From this, the trial court found a basis to support the guilty plea, entered a judgment of conviction and sentenced the defendant as stated above.
The issue, therefore, becomes whether a factual basis for a guilty plea may be established by the District Attorney's assertions of what he expects the evidence to show. The Court of Criminal Appeals held that the State must present "legal evidence," but the State alleges that a factual basis may come from several sources. United States v. King, 604 F.2d 411 (5th Cir. 1979). See also, Santobello v. New York, 404 U.S. 257,92 S.Ct. 495, 30 L.Ed.2d 427 (1971).
In North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160,27 L.Ed.2d 162 (1970), the United States Supreme Court held that a factual basis was required for the trial court to accept a guilty plea. While evidence was taken from witnesses in Alford, the Court made no statement that it was required that such evidence be taken as "legal evidence." The Court stated:
 "Thus, while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime."
400 U.S. at 37, 91 S.Ct. at 167. The Court of Criminal Appeals recently followed that holding in Young v. State, 408 So.2d 199
(Ala.Cr.App. 1981), in which it stated:
 "Where the offense is simple and the charge is quite specific, even Rule 11 (f), requiring that the judge determine that there is a reasonable basis for the plea, may be satisfied by the reading of the charge. Swensen v. Municipality of Anchorage, 616 P.2d 874
(Alaska 1980).
 "In order to insure that a guilty plea is made knowingly and intelligently, it is not necessary that the factual basis of the plea be established through the statements of the defendant where there is other information before the trial judge from which he can make this determination. An accused may plead guilty without admitting the acts of the crime if he intelligently concludes that his interest so requires and the record strongly evidences guilt."
408 So.2d at 201.
Likewise, in Santobello v. New York, 404 U.S. 257,92 S.Ct. 495, 30 L.Ed.2d 427 (1971), it was observed:
 "On June 16, 1969, petitioner accordingly withdrew his plea of not guilty and entered a plea of guilty to the lesser charge. Petitioner represented to the sentencing judge that the plea was voluntary and that the facts of the case, as described by the Assistant District Attorney, were true. The court accepted the plea and set a date for sentencing." *Page 909 
404 U.S. at 258, 92 S.Ct. at 497. While the conviction in that case was overturned, it was because of a failure to uphold a plea bargaining agreement, not because of the method by which the District Attorney presented his "evidence."
A case more factually similar to this one is United States v.King, 604 F.2d 411 (5th Cir. 1979). In that case, the defendant claimed that the court erred by not addressing him in determining whether a factual basis existed. The court, while holding that the defendant was addressed, specifically held that "As long as the factual basis is developed on the record,it may come from several sources" (emphasis supplied). The record, as shown in footnote 1 of the opinion in King, clearly indicates that the prosecutor showed what he expected the evidence to prove. The trial court accepted that showing and the sentence was pronounced.
It is apparent that the defendant in this case voluntarily and understandingly entered his plea of guilty. It thus becomes conclusive of his guilt. Knowles v. State, 280 Ala. 406,194 So.2d 562, cert. denied, 386 U.S. 1011, 87 S.Ct. 1358,18 L.Ed.2d 442 (1967); Camp v. State, 359 So.2d 1187 (Ala.Cr.App. 1978). Such a plea "serves as a stipulation that no proof by the prosecution need be advanced, except as expressly provided by statute, and it supplies both evidence and verdict, thereby ending the controversy." Albright v. State, 50 Ala. App. 480,484, 280 So.2d 186, cert. denied, 291 Ala. 771, 280 So.2d 191
(1973). A guilty plea is an admission of all the elements of the offense charged. Barnes v. State, 354 So.2d 343
(Ala.Cr.App. 1978).
In this case it is clear that Yamada voluntarily and understandingly entered his plea of guilty, finding it in his best interests to do so, and the mere fact that he denied any criminal intent is insufficient to override such a guilty plea. We likewise hold that a factual basis for accepting a guilty plea may be established by several sources, including a prosecuting attorney's assertions of what he expects the evidence to show. For these reasons, the decision of the Court of Criminal Appeals is reversed and the cause remanded.
REVERSED AND REMANDED.
FAULKNER, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.